IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FELIX GONZALEZ,<br><br>    Plaintiff,<br>v.<br><br>SALT LAKE CITY CORPORATION, DAVE TINGEY, AND LAMAR STUART,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00321-JNP-DAO<br><br>District Judge Jill N. Parrish |

Plaintiff Felix Gonzalez was an employee of the Department of Airports of Salt Lake City Corporation for over thirty years until October 2024. Gonzalez alleges race-based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 against Salt Lake City Corporation, Dave Tinger, a Senior Supervisor in the City's Airfield Maintenance Department, and Lamar Stuart, an Airfield Maintenance Supervisor with the City's Department of Airports. Defendants move to dismiss all claims. ECF No. 25. The court GRANTS the motion.

## PROCEDURAL BACKGROUND

The Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue Letter to Gonzalez on February 14, 2024. ECF 2-1 at 41. Gonzalez proceeded to file a complaint with this court on May 6, 2024, filing an amended complaint on September 9, 2024. Gonzalez sued Defendants pursuant to Title VII, claiming race-based discrimination and retaliation. Defendants moved to dismiss all claims, arguing (1) that Title VII relief can be granted only against employers, not individual supervisors; (2) that the relevant time period for Gonzalez's claims is 300 days prior to October 17, 2023, the date the EEOC charge was filed; and (3) that Gonzalez failed to plausibly allege discrimination and retaliation claims. Gonzalez opposes the

motion and additionally requests leave to amend the complaint if the court finds the complaint's factual allegations insufficient.

## LEGAL STANDARD

Defendants move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides that a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

## ALLEGATIONS IN THE AMENDED COMPLAINT

Gonzalez was hired to the Maintenance Division of the City's Department of Airports on August 25, 1994. Gonzalez alleges that while employed, he has been singled out on "numerous occasions by being written up or otherwise disciplined for unjustified reasons and for actions that other non-Hispanic and younger, similarly situated individuals were not disciplined for while engaging in the same behaviors." ECF 24 ¶ 12; *see* ECF 24 ¶ 38. Summarized below are the allegations relevant to the instant motion. The court recites the facts as alleged in Gonzalez's amended complaint.

A. **2015 "Coach and Counsel" Warning**

On March 13, 2015, Gonzalez was given a so-called "Coach and Counsel" warning for using inappropriate language. Gonzalez alleges that his coworkers also consistently spoke in that manner throughout his tenure at Salt Lake City Corporation.

2

### B. 2016 MEETING AND PRE-DETERMINATION HEARING NOTICE

On January 7, 2016, Gonzalez met with a Human Resources representative to notify her about his concerns relating to the work environment. At the meeting, Gonzalez informed the HR representative of "inappropriate racial comments" made to him in either 1999 or 2000 by another employee. ECF 24 ¶ 14. Gonzalez alleges one of those comments was "You Mexicans look for people in the newspaper who died." *Id.*

At some point on that same day, Gonzalez was informed that disciplinary action was being considered against him through the form of a pre-determination hearing notice. The considered action was based on Gonzalez failing to notify a supervisor directly that he was sick after a call-out was activated and Gonzalez being overheard saying he didn't want to miss his family opening Christmas gifts, suggesting that his claim of illness was just an excuse. Gonzalez retained an attorney to "prove that he was in fact sick at the time he called out and that he was following proper procedures." ECF 24 ¶ 15. The complaint does not allege any disciplinary action was taken.

A little less than a week later, on January 13, 2016, Gonzalez left a voice mail for the City's Equal Employment Opportunity manager, in which he described an incident where he was given a suspension for not wearing a seatbelt at work. Gonzalez alleged that no other employees were "singled out" for not wearing a seatbelt, and he noted that he was the only Hispanic employee. He additionally complained that his pre-determination hearing notice should not have included what Gonzalez described as "minor items from over 17 years ago." ECF 24 ¶ 16.

### C. 2023 WRITTEN WARNING

On April 14, 2023, Defendant Stuart issued a Written Warning to Gonzalez. The Warning related to three issues: (1) Gonzalez's absences from work on April 4 and 5, 2023; (2) Gonzalez's

absences from work on March 26 and April 3, 2023; and (3) a "Coach and Counsel" warning, which the Written Warning stated Gonzalez had received on February 27, 2023.[1]

### 1. Gonzalez's Absence from Work on April 4 and 5

On February 28, 2023, Gonzalez requested time off in writing for April 4 and 5. That same day, his request was approved by his supervisor, Defendant Stuart. Despite the prior approval, the April 14 Written Warning cited these two absences. According to the Written Warning, Stuart had instructed Gonzalez on February 28 that the requested days off were not guaranteed because in the winter, "there is only one guaranteed slot off per day" due to potential snowplow needs. ECF 2-1 at 27. For those who requested days off but are not in that guaranteed slot, notification of approval is provided "once the weather forecast is released for that day." *Id.* The Warning stated that snow removal duties were mandatory those days and that Gonzalez was notified he would be needed.

### 2. Gonzalez's Absence from Work on March 26 and April 3

The Warning also reprimanded Gonzalez for being absent on two additional days (March 26 and April 3), which Gonzalez finds issue with. While these days were regularly scheduled days off, the Warning stated that those days could not be guaranteed off due to established snowplow procedures and that Gonzalez was scheduled to work those days. Gonzalez alleges that because he was never called into work or put on standby these two days, the Written Warning on this issue lacked justification.

---

[1] Gonzalez attached the 2023 Written Warning and his EEOC charge to his original complaint. While ordinarily courts must accept the well-pleaded factual allegations as true in resolving a 12(b)(6) motion, there are exceptions to this rule. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013). As is the case here, when documents referred to in the complaint are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, the court may review the actual documents, rather than the complaint's description of them. *Id.*

### 3. The February 27 "Coach and Counsel" Warning

The Written Warning also stated that Gonzalez was issued a "Coach and Counsel" warning on February 27, 2023. This "Coach and Counsel" warning, however, never took place, and Gonzalez describes it as "pure fabrication." ECF 24 ¶ 26. The lack of documentation of the purported event was later confirmed by a City employee, and the Written Warning was amended on March 27, 2024, to remove the reference to the "Coach and Counsel" warning.

### D. EEOC Charge

Gonzalez filed a charge of race-based discrimination and retaliation with the Utah Anti-Discrimination & Labor Division and the Equal Employment Opportunity Commission on October 17, 2023.[2] The charge was attached to the plaintiff's original complaint, and it identifies one instance of discrimination: the 2023 Written Warning. Regarding retaliation, the charge stated only that Gonzalez "was retaliated against after [he] complained about discrimination." ECF 2-1 at 1.

### E. Subsequent Treatment

On January 25, 2024, Gonzalez was unable to take his mandated breaks at their regular time because he was called out to several airport operations. Consequently, Gonzalez took his break at 1 PM in the break room. Gonzalez was then reprimanded by Defendant Tingey, who told him that he could not take his break at that time or location.

On January 29, Gonzalez complained to Defendant Tingey about that reprimand, seeking an explanation as to why breaks could not be taken at that time and location. Gonzalez alleges this activity was protected by Title VII.

---

[2] Gonzalez's response to Defendants' Motion to Dismiss asserts that Gonzalez filed a new claim for retaliation with the EEOC in November 2024, but this was not alleged in the operative amended complaint nor was it attached as an exhibit.

On January 30, Defendant Tingey gave Gonzalez a letter explaining the restriction (on operational needs). Gonzalez alleged he was singled out by the letter and that Defendant Tingey did not notify any other crew members about the break restrictions.

On March 22, 2024, Gonzalez emailed a Human Resources employee to request information on what days he took breaks so that he could "enforce his rights." ECF 24 ¶ 29. Gonzalez did not get a response to his email as of September 9, 2024, the date he filed his amended complaint. Gonzalez alleges this activity was also protected by Title VII.

Gonzalez retired on October 15, 2024. According to the operative complaint, he chose not to work much longer after his retirement eligibility date of August 22, 2024, because he could not "risk Defendants retaliating against him . . . ." ECF 24 ¶ 28.

## ANALYSIS

### A. CLAIMS AGAINST DEFENDANTS TINGEY AND STUART

Defendants Dave Tingey and Lamar Stuart move to dismiss the claims against them. They argue Title VII relief can be granted only against employers rather than individual supervisors. The court agrees and GRANTS the motion to dismiss the claims against Defendants Tingey and Stuart WITH PREJUDICE. *See Lewis v. Four B Corp.*, 211 F. App'x 663, 665 (10th Cir. 2005) ("This court has repeatedly held 'that personal capacity suits against individual supervisors are inappropriate under Title VII,' which is directed, rather, to the plaintiff's employer." (quoting *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996))); *id.* at 665 n.2 (noting that adding supervisors "in their official capacity and/or as alter egos of the employer" is "superfluous where, as here, the employer is already subject to suit directly in its own name").

### B. ACTIONABLE EVENTS

Gonzalez alleges discrimination and retaliation in violation of Title VII. Defendants argue that most of the discriminatory acts Gonzalez alleges in support of those claims have not been administratively exhausted.

In deferral states (like Utah), Title VII claimants must file a charge of discrimination within 300 days of the alleged unlawful employment practice. *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 n.1 (10th Cir. 2003) (citing 42 U.S.C. § 2000e-5(e)(1)); *Butler v. Salt Lake City Sch. Dist.*, No. 2:20-CV-154 TS, 2020 WL 3104971, at *2 (D. Utah June 11, 2020). Such a filing "is a prerequisite to a civil suit under Title VII and a claim is time-barred if it is not filed within these time limits." *Davidson*, 337 F.3d at 1183. This is because "Title VII seeks to avoid 'the pressing of stale claims' . . . ." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1163 (10th Cir. 2007) (quoting *Zipes v. Trans World Airlines, Inc.*, 45 U.S. 385, 394 (1982)); *see Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) ("Title VII is not intended to allow employees to dredge up old grievances; they must promptly report and take action on discriminatory acts when they occur.").

"Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Accordingly, the court must consider the alleged discriminatory and retaliatory acts individually and determine whether administrative remedies were exhausted as to each. *Salemi v. Colorado Pub. Employees' Ret. Ass'n*, 747 F. App'x 675, 688 (10th Cir. 2018). If Gonzalez did not exhaust his administrative remedies as to a particular act, that act is not actionable, even though it might be related to acts alleged in timely filed charges. *See Morgan*, 536 U.S. at 113.

Defendants argue that the administrative exhaustion requirement was not fulfilled for any act beyond the 2023 Written Warning. ECF 25 at 10–11; ECF 35 at 7. The court agrees. First,

7

"after a plaintiff receives a notice of [his] right to sue from the EEOC, that plaintiff's claim in court 'is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'" *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (quoting *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005), *abrogated on other grounds by*, *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185–86 (10th Cir. 2018)). The charge in the instant case only discussed the 2023 Written Warning and a vague reference that Gonzalez was "retaliated against after [he] complained about discrimination." ECF 2-1 at 1. Any administrative investigation that followed would not reasonably be expected to cover acts spanning from 1999 to 2016, for a charge grounded in events occurring in 2023. Nor would the investigation reasonably be expected to cover acts occurring after the charge was filed. *See Cirocco v. McMahon*, 768 F. App'x 854, 861 (10th Cir. 2019) (holding a plaintiff "cannot exhaust" new claims in district court "by asserting that [they] 'reasonably [relate]' to" ones in a prior EEOC charge).

Second, Defendants also make a timeliness argument with respect to administrative exhaustion. The court considers this argument in order to be comprehensive, despite the resolution the prior argument provides. Defendants identify three groups of acts as time barred: (1) the 2015 "Coach and Counsel" warning; (2) the acts dealing with the 2016 meeting and pre-determination hearing notice, including the comments made in 1999 or 2000; and (3) the 2024 reprimand about break restrictions. In other words, Defendants argue that the only act for which Gonzalez timely filed a charge is the 2023 Written Warning. The court first considers the challenged acts that occurred before Gonzalez filed his charge. Then it turns to the challenged acts that occurred after he filed the charge.

1. **Pre-Charge Acts**

The 2015 "Coach and Counsel" warning and the acts relating to the 2016 meeting and pre-determination hearing notice, including the comments made in 1999 or 2000, occurred long before Gonzalez filed his charge in 2023 and years beyond the 300-day limitation. Gonzalez admits this is the case, but he argues that these acts should not be barred from consideration because they have a relationship with the acts that took place within the 300-day period. Noting that the Supreme Court in *National Railroad Passenger Corp. v. Morgan* has carved out distinct standards for hostile work environment claims as compared to discrimination claims, Gonzalez argues that *Morgan*'s hostile work environment standard is more applicable given the context of his discrimination claim. As Gonzalez states, his "case does not hinge on a discrete act, such as a termination, transfer, or demotion decision. Rather, his claims are supported by a series of events, where taken together, raise an inference of discrimination." ECF 32 at 5.

Gonzalez's argument can be characterized as what has been called the continuing violation theory. *Herrera v. City of Espanola*, 32 F.4th 980, 993 (10th Cir. 2022) (describing the theory as applied in the hostile work environment context as when "no single discrete act gives rise to a cause of action because the claim is 'based on the cumulative effect of individual acts.'" (quoting *Morgan*, 536 U.S. at 115)). The theory, however, has been rejected in the discrimination context, including in this circuit. *Salemi*, 747 F. App'x at 688. As the *Salemi* Court explained, the "Supreme Court has generally rejected the continuing violation theory—a theory under which a plaintiff's belated EEOC charge is timely with respect to discrete incidents of discrimination or retaliation that occur more than 300 days before the charge on the ground that several discrete incidents are all part of a continual pattern of discrimination. Thus, a plaintiff fails to timely exhaust her administrative remedies relative to a discrete incident of discrimination or retaliation that occurs more than 300 days before she files a charge with the EEOC." *Id.* (internal citations removed).

9

Furthermore, the Supreme Court in *Morgan* has clearly held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113.

The court declines to extend *Morgan*'s hostile work environment standard, which has been cabined to that specific context, to employment discrimination claims. *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1178 (10th Cir. 2011) ("*Morgan* took great pains to reaffirm the *Ricks* rule and to draw only a narrow distinction for hostile work environment claims."); *Wang v. All. for Sustainable Energy, LLC*, No. 20-CV-03780-NYW, 2022 WL 4536237, at *10 (D. Colo. Sept. 28, 2022) (holding that because the plaintiff did not allege a hostile work environment theory in her complaint, the continuing violation doctrine was inapplicable). As discrete acts, the 2015 "Coach and Counsel" warning and the events surrounding the 2016 meeting and pre-determination hearing notice are untimely filed and no longer actionable. The court may, however, use these prior acts as "background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113.

   **2. Post-Charge Acts**

The final challenged act, the 2024 reprimand about break restrictions, occurred after Gonzalez filed his charge in 2023. As discussed, Defendants argue that because the reprimand has never been the subject of an EEOC charge, it is barred by the administrative exhaustion requirement. Gonzalez's response asserts he filed a new charge for retaliation with the EEOC in November 2024. ECF 32 at 2. The new charge ostensibly relates to new incidents of alleged retaliation described in Gonzalez's response, though Gonzalez has not provided a copy of any new charge or right-to-sue letter. *Id.* (alleging the new EEOC charge is "based on new facts" that took place after Gonzalez first filed his original charge).

"[W]here discrete incidents of discrimination occur after an employee files an initial EEOC charge, the employee must file an additional or amended EEOC charge to satisfy the exhaustion

10

requirement." *Salemi*, 747 F. App'x at 688; *see Martinez v. Potter*, 347 F.3d 1208, 1210–11 (10th Cir. 2003) (noting that, in the Tenth Circuit, the rule of *Morgan* applies equally "to discrete claims based on incidents occurring *after* the filing of Plaintiff's EEO complaint"). "A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter." *Lincoln*, 900 F.3d at 1181 (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004)).

Neither the new charge nor any potential required right-to-sue-letter are presented to the court. In addition, it is not clear that the new charge even discusses the 2024 reprimand. Accordingly, the court holds that the 2024 reprimand and any new claims in the new charge are barred by the administrative exhaustion requirement.

In sum, the only actionable acts relate to the 2023 Written Warning, which was included in the original charge. The 2015 "Coach and Counsel" warning, the events relating to the 2016 meeting and pre-determination hearing notice, the 2024 reprimand, and any new acts included in a new EEOC charge either were not or have not been administratively exhausted. Furthermore, in the following analysis, the court will not consider any new factual allegations included in Gonzalez's response, including any descriptions of acts that were purportedly included in the new charge Gonzalez filed. *See Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) ("Plaintiffs cannot rectify their pleading deficiencies by asserting new facts in an opposition to a motion to dismiss.").

### C. TITLE VII DISCRIMINATION CLAIM

Defendants next assert that Gonzalez has not alleged a plausible claim of Title VII discrimination because the complaint (1) lacks allegations that would constitute direct evidence of discrimination and (2) did not state a prima facie case of discrimination.

"A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing 411 U.S. 792 (1973)). "Direct evidence is '[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.' For example, '[s]tatements showing 'an existing policy which itself constitutes discrimination' are direct evidence of discrimination.' Statements that 'require the trier of fact to infer that discrimination was a motivating cause of an employment decision,' however, 'are at most circumstantial evidence of discriminatory intent.'" *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137 (10th Cir. 2024) (internal citations removed).

When considering indirect evidence, the burden shifting framework established by *McDonnell Douglas* requires a plaintiff to first establish a prima facie case of discrimination. 411 U.S. at 802. "To set forth a prima facie case of discrimination, a plaintiff must establish the elements of a Title VII discrimination claim." *McNellis*, 116 F.4th at 1137. Once the plaintiff has done so, the burden shifts to the defendant "to prove a 'legitimate, non-discriminatory reason for the adverse employment action.'" *Id.* (quoting *Barlow v. C.R. Eng., Inc.*, 703 F.3d 497, 505 (10th Cir. 2012)). If the defendant satisfies its burden, the plaintiff must then show the offered justification was pretextual. *McNellis*, 116 F.4th at 1137.

The Tenth Circuit in *McNellis* further explained how these standards apply in a motion to dismiss. "[A]t the 12(b)(6) stage, a plaintiff need not conclusively *prove* a violation of Title VII. And the *McDonnell Douglas* burden shifting framework 'does not create a pleading requirement.' At the 12(b)(6) stage, the 'plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss.' We therefore consider only whether [the plaintiff] has 'sufficiently stated . . . claims for relief' by plausibly alleging either direct evidence

12

of discrimination or a prima facie discrimination claim." *Id.* at 1137–38 (internal citations removed).

Here, Gonzalez has not plausibly alleged any direct evidence of discrimination. To be sure, the operative complaint states early in its allegations that "Plaintiff has been singled out on numerous occasions by being written up or otherwise disciplined for unjustified reasons and for actions that other non-Hispanic and younger, similarly situated individuals were not disciplined for while engaging in the same behaviors." ECF 24 ¶ 12. It also generally asserts that "Defendants have a habit and/or practice of discriminating based on race and condoning and/or allowing racial discrimination." ECF 24 at 37. But Gonzalez has presented no evidence that would establish discrimination without inference or presumption. Even considering the 2015 "Coach and Counsel" warning and the 2016 meeting and pre-determination hearing notice as, albeit dated, background evidence, the 2023 Written Warning presents no evidence of a clear existing policy of discrimination and requires a significant inference on the part of the court to support the existence of any discrimination. For example, the reference in the Written Warning to the non-existent February 27 "Coach and Counsel" warning would nevertheless require the court to infer a discriminatory motive behind the apparent fabrication. Gonzalez argues in his response that "[b]ased on his experience, he is confident race was a reason and motivating factor for the April 2023 warning and other conduct pled in the Amended Complaint . . . ." ECF 32 at 8. But that belief does not constitute direct evidence of discrimination.

The court next considers if Gonzalez has plausibly alleged a prima facie discrimination case. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192. "[A] Title VII plaintiff bringing a claim

13

of employment discrimination must plausibly allege these elements: (1) '[he] is a member of a protected class,' (2) '[he] suffered an adverse employment action,' and (3) 'the challenged action occurred under circumstances giving rise to an inference of discrimination.'" *McNellis*, 116 F.4th at 1139 (quoting *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015)).

Defendants do not appear to argue against Gonzalez plausibly alleging the first element. Defendants also only briefly address whether the 2023 Written Warning can be considered an adverse employment action in their reply brief. ECF 35 at 5. Accordingly, the primary question presented is whether the challenged action occurred under circumstances giving rise to an inference of discrimination. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief . . . ."); *Bordertown, LLC v. AmGUARD Ins. Co.*, No. 22-CV-01683-REB-GPG, 2022 WL 17538186, at *2 (D. Colo. Oct. 5, 2022) (noting district courts in the Tenth Circuit "routinely refuse to consider arguments which have been presented only in a reply brief").

Gonzalez has alleged that similarly situated employees were treated more favorably than he was, which is one method a plaintiff can plead circumstances giving rising to an inference of discrimination. *McNellis*, 116 F.4th at 1141. "Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'" *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 802 (10th Cir. 2007) (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)).

However, Gonzalez has failed to adequately plead in his amended complaint that there were similarly situated employees treated more favorably than he. In no part of the complaint that

14

deals with the 2023 Written Warning does he describe that other employees were *treated differently* than he was with respect to this issue. His claim is only supported by conclusory speculation that his "race was a reason and motivating factor," "Defendants had a habit and/or practice of discriminating," and "Defendants treated similarly situated employees outside of Plaintiff's protected categories more favorably." ECF 24 ¶¶ 36–38. Further, Gonzalez has failed to plead any facts supporting his conclusion that there were employees that were *similarly situated*. *See McNellis*, 116 F.4th at 1141 (holding a plaintiff did not succeed in alleging other individuals were similarly situated to him when the plaintiff "alleged no facts that would allow [the court] to conclude [other employees] shared a supervisor, evaluation and performance standards, or comparable behavior"); *Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014) (stating that a plaintiff alleging she was similarly situated was "just a legal conclusion—and a legal conclusion is never enough"). Throughout the complaint, Gonzalez only references "his coworkers" (ECF 24 ¶ 13), "other employees . . . which comprised of no other Hispanic individuals," (¶ 16) and "other crew members" (¶ 20). Even if these references could be considered enough for a court to infer that those individuals were similarly situated, each of those references relate to an unexhausted act, not the 2023 Written Warning.

      To be sure, being treated less favorably than similarly situated employees is just one method to plead circumstances giving rise to an inference of discrimination. Allegations that sufficiently provide "enough context and detail to link the allegedly adverse employment to a discriminatory or retaliatory motive with something besides 'sheer speculation'" can give rise to an inference of discrimination as well. *McNellis*, 116 F.4th at 1141–42 (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1274–75 (10th Cir. 2019)).

But here, Gonzalez has neither met that standard nor risen above "sheer speculation." Considered most liberally, Gonzalez's prima facie claim of discrimination comprises the following allegations:

- He is Hispanic. *See* ECF 24 ¶¶ 12, 16.

- He requested time off for the days of April 4 and 5, 2023. The request was approved. ECF 24 ¶ 21.

- Despite the prior approval, he was issued a Written Warning for being absent those days. ECF 24 ¶ 22.

- The Written Warning also included an admonishment for being absent on March 23, 2023, and April 3, 2023, despite the fact that Gonzalez was not called into work or put on standby those two days. ECF 24 ¶ 24.

- In addition, the Written Warning referenced a prior February 27 "Coach and Counsel" warning that did not occur. But this reference was eventually removed from the Written Warning. ECF 24 ¶¶ 26–27.

Gonzalez at best has described a situation in which he was unfairly reprimanded through the Written Warning. No plausible link can be drawn between those actions, with the context and detail provided, and a discriminatory motive. Gonzalez does in fact provide more context and detail with respect to being treated less favorably than similarly situated employees with his 2015 "Coach and Counsel" warning, the events surrounding the 2016 meeting and pre-determination hearing notice, and the 2024 reprimand. However, as described, these acts are barred by administrative exhaustion, and, even if considered (either as standalone discrete acts or, for the pre-2023 acts, as background evidence supporting the 2023 Written Warning allegation), they do

not give rise to an inference of discrimination. The court accordingly GRANTS the motion to dismiss the Title VII discrimination claim.

### D. TITLE VII RETALIATION CLAIM

Defendants finally argue that Gonzalez has failed to adequately plead a retaliation claim. Defendants first assert that Gonzalez's alleged protected activity occurred after his EEOC charge and is thus barred by the administrative exhaustion requirement. Second, Defendants argue that Gonzalez's claim fails both because protected activity must come before the alleged materially adverse action and because Gonzalez's claim contains insufficient context and detail.

Title VII "makes it unlawful for an employer to retaliate against an employee 'because [he] has opposed any practice made an unlawful employment practice by this subchapter.' To survive a motion to dismiss, a plaintiff asserting a Title VII retaliation claim must 'plausibly allege '(1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *McNellis*, 116 F.4th at 1142 (internal citations removed). "'Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient.' 'The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief.'" *Id.* at 1143. A plaintiff "may establish the causal connection [necessary under Title VII] by proffering 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Hanson v. Colorado Jud. Dep't*, 564 F. App'x 916, 919 (10th Cir. 2014) (quoting *Annett v. Univ. of Kan.,* 371 F.3d 1233, 1239–40 (10th Cir.2004)).

For his retaliation claim, Gonzalez specifically points to two protected activities, "among other things:" complaining to Defendant Tingey about the January 29, 2024 reprimand and submitting an email to Human Resources on March 22, 2024, to request information on the days

17

he took breaks. ECF 24 ¶ 42. With respect to these alleged protected activities, the claims have not been administratively exhausted as described above. *See, e.g.*, *Armstrong v. Ennis Bus. Forms of Kansas, Inc.*, No. CV 21-02258-KHV, 2022 WL 17338281, at *8 (D. Kan. Nov. 30, 2022) (granting summary judgment for a defendant on a retaliation claim because the plaintiff did not exhaust administrative remedies for the claim).

Gonzalez also alleges that after engaging in "other protected activity," he was retaliated against and subjected to materially adverse employment actions—namely, the 2023 Written Warning. ECF 24 ¶ 43. With respect to this claim, Defendants are correct in asserting that Gonzalez's conclusory allegation that he had engaged in "other protected activity" is too vague to support his claim. That sort of broad, general statement does not allow for "at least a reasonable inference of the legally relevant facts." *McNellis*, 116 F.4th at 1143 (quoting *Bekkem*, 915 F.3d at 1275).

Gonzalez in his response argues that "the other protected activity can be identified by reading the background facts" of the complaint, explicitly referring to the 2016 conversation with Human Resources about his concerns about the work environment. ECF 32 at 9. Even if the court accepts that this prior activity (which was not identified as protected activity in the complaint) is the relevant protected activity, Gonzalez has failed to plausibly allege any causal connection between the 2016 protected activity and the Written Warning that took place *seven years* later. *See Hanson*, 564 F. App'x at 919–20 (noting that the Tenth Circuit has held even a *three-month period* between the protected activity and the adverse action, alone, is insufficient to show causation). For these reasons, the Defendants' motion to dismiss the Title VII retaliation claim is GRANTED.

### E. MOTION FOR LEAVE TO AMEND THE COMPLAINT

Finally, in his response to Defendants' motion to dismiss, Gonzalez seeks leave to amend his complaint if the court determines supplementary facts are necessary. He seeks to "add details

about events that had taken place after this legal action was instituted," with the events providing "more context and detail to link a discriminatory motive to adverse employment actions." ECF 32 at 10. He also seeks "to more clearly plead" the elements of his claims to "present a stronger foundation" for them. ECF 32 at 11.

The court DENIES Gonzalez's request for leave to amend the complaint included in his response brief. Pursuant to DUCivR 7-1(a)(3), such relief must be sought by separate motion. It must also include as exhibits the proposed amended pleading as well as a redlined version of the proposed amended pleading comparing it with the pleading sought to be amended. DUCivR 15-1(a).

## CONCLUSION

For the reasons above, the Defendants' motion is GRANTED. Gonzalez's claims against Defendants Tingey and Stuart are DISMISSED WITH PREJUDICE, and Gonzalez's other claims are DISMISSED WITHOUT PREJUDICE, as this is the court's first occasion to consider them.

Signed September 25, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge